# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES EDWARD TURNER, JR.,    )
                               )
            Plaintiff,         )
                               )
    v.                         )     1:15CV947
                               )
MR. CLELLAND, et al.,          )
                               )
            Defendants.        )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Plaintiff's "Request for Temporary Injunction" (the "Motion") (Docket Entry 4). For the reasons that follow, the Court should deny the Motion.

## I. BACKGROUND

Plaintiff, a North Carolina prisoner, currently incarcerated at the Albemarle Correctional Institution ("ACI"), filed a Complaint against ACI "Superintendent Mr. Clelland," "C/O Curry" ("Defendant Curry"), and "Case Manager Ms. Honeycutt" ("Defendant Honeycutt"), as well as the "NCDPS Director of Chaplaincy Services Ms. Betty Brown" ("Defendant Brown," collectively with Superintendent Mr. Clelland, Defendant Curry, and Defendant Honeycutt, the "Defendants"), alleging violations of his federal constitutional rights and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. (Docket

Entry 1 at 2-4.)[1]  According to the Complaint, Defendants have "place[d] more than a substantial burden upon [Plaintiff's] religious practice" of his Muslim faith during his incarceration at ACI.  (Id. at 3.)  The Complaint further alleges that, although "[Plaintiff] ha[s] four claims . . .[,] really its [sic] all one. The individual Staff members both personally and officially, both singularly and en masse, have created a toxic environment for Non-Christian practitioners at [ACI].  That is [Plaintiff's] Claim. ([Plaintiff is] the Non-Christian Practioner [sic])."  (Id.)

Along with his Complaint, Plaintiff filed the instant Motion requesting that the Court:

>   1. Temporarily prohibit Jumuah prayers from being held in the [ACI] Recreation Quiet Room [(the "Recreation Room")], while these proceedings are being held [(the "Recreation Room Request");]
>
>   2. Temporarily prohibit any non-medical emergency transfers of Plaintiff unless the Court is notified in a timely manner before, during or after transfer, while these proceedings are being held [(the "Transfer Request"); and]
>
>   3. If these proceedings are still pending when Day-Light Savings Time (DST) ends in the spring of 2016, temporarily prohibit Jumuah Prayer from being held during the forbidden times [(the "DST Request")].

---

[1] Many of Plaintiff's filings are hand-written in small-caps. (See, e.g., Docket Entry 1.)  For legibility purposes, the undersigned reproduces Plaintiff's filings in regular typeface.

(Docket Entry 4 at 1.)[2] Plaintiff included with the Motion a "Supporting Brief" (Docket Entry 5), "Memorandem [sic] of Law on Albemarle Minority Faith Groups" (Docket Entry 6), and "Memorandem [sic] of Law on Islamic Purification" (Docket Entry 7), but no supporting affidavits.[3]

The Recreation Room Request arises from Plaintiff's contention that prison staff moved religious services from ACI's chapel (the "Chapel") to its Recreation Room when the Chapel experienced electrical issues on October 30, 2015. (Docket Entry 1 at 13.) Plaintiff maintains that ACI allegedly operates a dog training program in the Recreation Room "many times a week." (Docket Entry 7 at 5.)[4] The Complaint alleges that Plaintiff "notified staff

---

[2] The Complaint describes "Jumuah" as "Friday or Day of Gathering" (Docket Entry 1 at 4), as well as a service held on Fridays that consists of prayer and a sermon (id. at 8). Practitioners of Islam apparently variously denominate such Friday services as "Jumu'ah, Jum'ah, Jumah, Jumma, Jummah, and Jumuah." McCoy v. Frazier, No. 2:09CV412, 2010 WL 2975747, at *1 n.1 (E.D. Va. July 6, 2010) (unpublished). For purposes of this Memorandum Opinion and Recommendation, the undersigned adopts Plaintiff's spelling – Jumuah.

[3] In support of his Complaint, Plaintiff filed the affidavit of Norman Linwood Vassar III who asserts that he heard Defendant Curry make a derogatory remark to Plaintiff about his faith. (Docket Entry 1-1 at 11.)

[4] The Complaint alleges that the Recreation Room contains "doggy hair everywhere, especially attached to all of the table legs," and that there are "doggy mats and other training aids . . . stored in this room." (Docket Entry 1 at 10.) Plaintiff further asserts that the Recreation Room "is also used as a secondary location for the housing of dogs, as [inclement weather] is concerned, when the weather reaches certain predetermined limits." (Docket Entry 7 at 4.)

3

that the Islamic service . . . could not be held in an area that routinely accommodates animals of any kind." (Docket Entry 1 at 13.) According to the Complaint, although prison officials had moved Jumuah to "visitation" on another occasion when electrical issues rendered the Chapel unavailable, this time ACI staff cancelled Jumuah because of Plaintiff's objection. (Id. at 10, 13; see also Docket Entry 5 at 4 ("[Defendant] Honeycutt knows that visitation and the libraries and the [court]-yard were all available for Jumuah, since [Plaintiff] had previously gone through this issue with her previously, and she accommodated. Cancelling Jumuah Prayers was not the least restrictive means and it was a substantial burden.").) Plaintiff seeks an injunction prohibiting ACI from holding Jumuah in the Recreation Room if the Chapel again becomes unavailable. (Docket Entry 4 at 1.)

As to the Transfer Request, the Motion provides no grounds for the Court to prohibit Plaintiff's non-medical emergency transfer without notice to the Court. (See id. at 1-2.) Finally, the DST Request asks that the Court prohibit ACI from holding "Jumuah Prayer . . . during the forbidden times" when Daylight Saving Time ("DST") "ends in the spring of 2016." (Id. at 1.)[5] Consistent with this request, the Complaint states:

---

[5] Pursuant to 15 U.S.C. § 260a(a), DST commences "on the second Sunday of March of each year and end[s] . . . on the first Sunday of November of each year." 15 U.S.C. § 260a(a). The DST Request thus presumably means when DST begins, not ends.

4

> Muslims must pray at least 5 times a day, these prayers
> are called obligatory. . . . The obligatory prayers must
> be performed a[t] certain "times" a day in relation to
> the sun.  There are three forbidden prayer times:
> Sunrise, High noon and Sunset [-] each lasts
> approximately 15 minutes.  The Noon Prayer must be
> performed after "High" noon. Every prison chapel prints
> out a yearly prayer time sheet so everyone knows what
> time to pray.  In the summer months this time can be as
> late as 1:40 pm but for most of the time it's about 1:25
> pm.  In the winter months - time falls back one-hour so
> this time is 12:40 most of the time 12:25.  Most prisons
> understand this and so Jumuah is from 1:30-2:30 pm year
> round no problems.

(Docket Entry 1 at 5.)  The Complaint alleges that ACI holds Jumuah from 12:45 p.m. to 1:45 p.m., on Defendant Brown's authorization. (Id. at 6; see also Docket Entry 5 at 3.)  According to the Complaint, DST will cause the one-hour Jumuah service to overlap with a forbidden prayer time.  (Docket Entry 1 at 4-5.)  In Plaintiff's view, this overlap forces him to "either pray during the forbidden time or miss Jumuah (one sin or the other)." (Docket Entry 5 at 3.)  As a result, he seeks injunctive relief prohibiting ACI from holding Jumuah "during the forbidden times."  (Docket Entry 4 at 1.)

## II. DISCUSSION

The Motion seeks temporary injunctive relief "while these proceedings are being held."  (Id.)  Defendants have not yet appeared.  (See Docket Entry 17 (reflecting returns of service by the United States Marshals Service that, on their face, would require Defendants to answer or otherwise respond from March 17,

5

2016, to March 22, 2016).) "The grant of interim [injunctive] relief is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Steakhouse, Inc. v. City of Raleigh, 166 F.3d 634, 637 (4th Cir. 1999) (brackets omitted); see also Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (describing "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). "The purpose of a TRO is to preserve the status quo and avoid possible irreparable injury to a party pending litigation until a hearing may be conducted." Watson v. Garman, No. 7:12-CV-37, 2012 WL 664066, at *1 (W.D. Va. Feb. 29, 2012) (unpublished) (citing Steakhouse, Inc., 166 F.3d at 637). "A [TRO], particularly one granted without notice to the defendant, is an emergency procedure and is appropriate only when the applicant is in need of immediate relief." Broughton v. Aldridge, No. 5:10-CV-231, 2010 WL 2332103, at *1 (E.D.N.C. June 9, 2010) (unpublished) (internal quotation marks omitted). Plaintiff's instant Motion fails under both the procedural rule that governs TROs and the legal test for preliminary injunctive relief.

## A. Federal Rule of Civil Procedure 65

Two procedural safeguards exist to protect defendants against unwarranted TROs. See Fed. R. Civ. P. 65(b)(1)(A)-(B). First, the movant must provide "specific facts in an affidavit or a verified

6

complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the moving party's attorney, or the movant himself, in the case of a *pro se* party, must 'certif[y] in writing any efforts made to give notice and the reasons why it should not be required.'" Science Sys. & Applications, Inc. v. United States, Civ. Action No. 14-2212, 2014 WL 3672908, at *3 (D. Md. July 22, 2014) (unpublished) (quoting Fed. R. Civ. P. 65(b)(1)(B)). "The stringent restrictions imposed by . . . Rule 65[ of the Federal Rules of Civil Procedure ("Rule 65")] on the availability of ex parte [TROs] reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 438-39 (1974) (footnote omitted). Thus, courts may not lightly disregard Rule 65's technical requirements, as they provide crucial procedural safeguards of due process. Tchienkou v. Net Trust Mortg., No. 3:10-CV-23, 2010 WL 2375882, at *1 (W.D. Va. June 9, 2010) (unpublished) (citing Austin v. Altman, 332 F.2d 273, 275 (2d Cir. 1964) ("emphasiz[ing] that a district court should scrupulously observe the requirements of Rule 65 in the delicate business of granting [TROs]")).

7

Here, Plaintiff did not verify his Complaint (see Docket Entry 1) or submit affidavits in support of the instant Motion (see Docket Entries 4-7). Further, "Plaintiff has not certified in writing any efforts made to put Defendant[s] on notice of the [M]otion, nor has he offered any reason as to why notice should not be required." Tchienkou, 2010 WL 2375882, at *1. Given Plaintiff's failure to adhere to Rule 65(b)'s procedural requirements, the Court should deny his Motion. See id. (denying pro se plaintiff's motion for TRO for failing to adhere to Rule 65(b)(1)'s procedural requirements, holding "[t]he requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard"); see also Parker v. American Brokers Conduit, Civ. Action No. 15-3652, 2015 WL 7751664, at *2 (D. Md. Dec. 1, 2015) (unpublished) (observing that the pro se plaintiff's noncompliance with Rule 65(b)(1)(B)'s notice provision justifies denial of TRO motion/request); Lescs v. Berkeley Cnty. Sheriffs Office, No. 3:14-CV-96, 2014 WL 4802057, at *3 (N.D.W. Va. Sept. 23, 2014) (unpublished) (same).

Under these circumstances, the Court should deny Plaintiff's instant Motion for failure to satisfy Rule 65(b)(1)'s procedural requirements.

**B. Legal Test for Preliminary Injunctive Relief**

Even if Plaintiff had satisfied Rule 65(b)'s procedural requirements, the United States Supreme Court "requires parties

8

seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) (citing Winter, 555 U.S. at 20); see also Miles v. Guice, Civ. Action No. 5:13-CT-3193, 2014 WL 1399442, at *1 n.2 (E.D.N.C. Apr. 10, 2014) (unpublished) (noting that preliminary injunction standards apply to TROs (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999))). This standard "requir[es] that each preliminary injunction factor be satisfied as articulated." Id. (internal quotation marks omitted). Here, Plaintiff has not shown that he will suffer irreparable harm or that the public interest favors granting such "extraordinary" relief.

First, the Motion's Recreation Room Request asks that the Court prohibit ACI from holding Jumuah in the Recreation Room. (Docket Entry 4 at 1.) Plaintiff's filings establish that Jumuah routinely occurs in the Chapel (see, e.g., Docket Entry 1-1 at 19-20 (the Chapel's August 2015 and October 2015 monthly calendars showing "Islamic Jumah" held every Friday from 12:45-1:45 p.m.)), and only two instances of the Chapel's unavailability for religious services during Plaintiff's incarceration at ACI (see Docket Entry 1 at 10, 13 (explaining that, due to electrical problems, the Chapel was not available on September 4, 2015 and October 30,

9

2015)). Further, the Complaint alleges that ACI attempted to relocate Jumuah to the Recreation Room on only one of those two occasions. (See id. at 13 (explaining that on September 4, 2015, Defendant Honeycutt moved Jumuah to "Visitation," whereas on October 30, 2015, ACI staff cancelled Jumuah when Plaintiff objected to holding Jumuah in the Recreation Room).) On these facts, Plaintiff cannot show that he suffers the type of immediate threat of irreparable harm that would warrant preliminary injunctive relief. See Winters, 555 U.S. at 22 (rejecting notion that courts may award injunctive relief "simply to prevent the possibility of some remote future injury" (internal quotation marks omitted)).

Further, prohibiting ACI from holding Jumuah in the Recreation Room would require the judiciary to interject itself into the day-to-day operations of a prison facility, something courts rarely should do. See Scott v. Mathena, No. 7:12-CV-469, 2012 WL 4891711, at *2 (W.D. Va. Oct. 15, 2012) (unpublished) (citing Bell v. Wolfish, 441 U.S. 520, 540 n.23, 548 n.29 (1979) (explaining that "maintaining security and order and operating the [prison] in a manageable fashion . . . [are] considerations . . . peculiarly within the province and professional expertise of corrections officials" and that "courts should defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill

10

equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch" (internal quotation marks omitted))). As the Supreme Court recently recognized, "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise." Holt v. Hobbs, ___ U.S. ___, ___, 135 S. Ct. 853, 864 (2015). At this early stage in the litigation, a directive mandating that Defendants alter ACI's decisions about the location of religious programs poses potential security and safety concerns. See generally Rogers v. Stanback, No. 1:13CV209, 2013 WL 6729864, at *1, *3 (M.D.N.C. Dec. 19, 2013) (unpublished) (recommending denial of pro se prisoner's motion for TRO requesting authorization to possess certain prohibited "religious" materials, in part, because "court involvement in decisions made by prison administrators regarding materials deemed to be security threats" did not serve public interest), recommendation adopted, slip op. (M.D.N.C. Feb. 20, 2014). The Court should therefore deny Plaintiff's Recreation Room Request.

Second, the Motion's Transfer Request petitions the Court to "[t]emporarily prohibit any non-medical emergency transfers of Plaintiff unless the Court is notified in a timely manner before, during or after transfer, while these proceedings are being held." (Docket Entry 4 at 1.) Plaintiff has not demonstrated (see Docket

11

Entries 4-7) and likely cannot demonstrate that this request will provide him relief from Defendants' alleged violations of his religious rights, will prevent him irreparable harm, or will serve the public interest, see Merriweather v. Reynolds, 586 F. Supp. 2d 548, 557 (D.S.C. 2008) ("There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution." (citing Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983))); see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (noting that prisoner's transfer to a different prison mooted request for declaratory and injunctive relief). The Court should thus deny Plaintiff's Transfer Request.

Third, the Motion's DST Request asks that the Court prohibit ACI from holding Jumuah "during the forbidden times" in the spring of 2016. (Docket Entry 4 at 1.) In that regard, the Complaint alleges that, while incarcerated at other North Carolina prisons, Plaintiff requested changes in the scheduling of Jumuah during DST and those prisons "matched the facility time with the year-round . . . time[;] 1:15 pm - 2:30 pm." (Docket Entry 1 at 5.) However, the Complaint alleges that ACI denied a similar request. (Id.) Plaintiff's filings reveal that the Chapel holds a Catholic service on the first Friday of each month from 2:00 p.m. to 3:00 p.m. (see Docket Entry 1-1 at 19-20), such that a scheduling conflict would

12

arise if ACI moved Jumuah to the later time requested by Plaintiff. (See Docket Entry 1 at 5 (explaining that prison officials denied Plaintiff's request to move Jumuah back because "it conflicted with a once a month Catholic service"). That potential conflict highlights the fact that scheduling prisoner programs and allocating space to those programs generally constitute matters appropriately left to prison officials. Indeed, "[e]fficient and effective penal administration furthers the public's interest, and involving a federal court in the day-to-day administration of a prison is a course the judiciary generally disapproves of taking." Maxwell v. Clarke, No. 7:12-CV-477, 2012 WL 5463200, at *2 (W.D. Va. Nov. 8, 2012) (unpublished) (citing 18 U.S.C. § 3626(a)(2) (mandating that, when considering appropriate remedies with respect to prison conditions, courts "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity")). The Court should therefore deny Plaintiff's DST Request.

In sum, Plaintiff has failed to show entitlement to preliminary injunctive relief.

### III. CONCLUSION

Plaintiff failed to comply with the procedural prerequisites for obtaining a TRO and to establish entitlement to preliminary injunctive relief.

13

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Request for Temporary Injunction (Docket Entry 4) be **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 16, 2016